UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

───────────────────────────────────────────

DENZEL VARGAS,

    *Plaintiff,*

    *v.*

CITY OF WEST ALLIS, MORGAN YOUNGQUIST,
OLIVIA COURT, MARK BURCKEL,
JESSE YIANNACKOPOULOS, & LEVI KOSSOW,

    *Defendants.*

Case No: 2:26-cv-343

───────────────────────────────────────────

# COMPLAINT

───────────────────────────────────────────

Plaintiff Denzel Vargas, by his lawyers, Strang Bradley, LLC, for his complaint against Defendants, states:

## INTRODUCTION

1. On May 10, 2025, Plaintiff Denzel Vargas was watching the NBA playoffs with his cousin Richard Vargas and their friend Emanuel Davis.

2. After the games ended, the three stepped outside Richard's apartment to enjoy the summer air and have a cigarette.

3. Defendant Morgan Youngquist responded to the apartment complex after receiving a complaint that individuals were drinking and smoking on the sidewalk.

4. When Youngquist arrived, Richard and Davis were each drinking a beer on a concrete patio attached to the front door of the complex. No one was smoking. Denzel didn't have a beer.

5. Youngquist demanded that the three individuals provide identification, but Denzel said he did not have identification on him and declined to provide his name.

6. During this time, Defendants Olivia Court, Mark Burckel, Jesse Yiannackopoulos, and Levi Kossow arrived on the scene.

7. After Denzel declined to provide his identification, Youngquist, without warning, grabbed Denzel, pushed him up against the door of the apartment, and then took him to the ground.

8. Rather than intervene to stop this unlawful use of force, Defendants Court, Burckel, Yiannackopoulos, and Kossow helped Youngquist tackle Denzel.

9. Once on the ground, Denzel attempted to comply with the Defendants' demands.

10. Despite these efforts, the Defendants continued to use force against Denzel, including a taser.

## JURISDICTION AND VENUE

11. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

12. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and the state law claims for indemnification pursuant to 28 U.S.C. § 1367.

13. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of West Allis is a political subdivision of the State of Wisconsin located within this judicial district.

Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

14. Plaintiff Denzel Vargas is a resident of the State of Wisconsin.

15. Defendant City of West Allis is a political subdivision of the State of Wisconsin and was the employer of individual Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow at the time of the occurrences giving rise to this lawsuit and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment pursuant to WIS. STAT. § 895.46.

16. Defendant Morgan Youngquist was, at the time of this occurrence, employed as a police officer for the West Allis Police Department.

17. At all times that Defendant Youngquist interacted with Plaintiff on May 10, 2025, Youngquist was acting under color of state and local law.

18. At all times that Defendant Youngquist interacted with Plaintiff on May 10, 2025, Youngquist was acting within the scope of his employment with the West Allis Police Department.

19. Defendant Youngquist is sued in his individual capacity.

20. Defendant Olivia Court was, at the time of this occurrence, employed as a police officer for the West Allis Police Department.

21. At all times that Defendant Court interacted with Plaintiff on May 10, 2025, Court was acting under color of state and local law.

22. At all times that Defendant Court interacted with Plaintiff on May 10, 2025, Court was acting within the scope of her employment with the West Allis Police Department.

23. Defendant Court is sued in her individual capacity.

24. Defendant Mark Burckel was, at the time of this occurrence, employed as a police officer for the West Allis Police Department.

25. At all times that Defendant Burckel interacted with Plaintiff on May 10, 2025, Burckel was acting under color of state and local law.

26. At all times that Defendant Burckel interacted with Plaintiff on May 10, 2025, Burckel was acting within the scope of his employment with the West Allis Police Department.

27. Defendant Burckel is sued in his individual capacity.

28. Defendant Jesse Yiannackopoulos was, at the time of this occurrence, employed as a police officer for the West Allis Police Department.

29. At all times that Defendant Yiannackopoulos interacted with Plaintiff on May 10, 2025, Yiannackopoulos was acting under color of state and local law.

30. At all times that Defendant Yiannackopoulos interacted with Plaintiff on May 10, 2025, Yiannackopoulos was acting within the scope of his employment with the West Allis Police Department.

31. Defendant Yiannackopoulos is sued in his individual capacity.

32. Defendant Levi Kossow was, at the time of this occurrence, employed as a police officer for the West Allis Police Department.

33. At all times that Defendant Kossow interacted with Plaintiff on May 10, 2025, Kossow was acting under color of state and local law.

34. At all times that Defendant Kossow interacted with Plaintiff on May 10, 2025, Kossow was acting within the scope of his employment with the West Allis Police Department.

35. Defendant Kossow is sued in his individual capacity.

**FACTS**

36. On May 10, 2025, Denzel Vargas was watching a playoff basketball game at Richard's apartment in West Allis.

37. Denzel, Richard, and Davis stepped outside onto a concrete patio at the complex's front door.

38. Another resident at the apartment complex called law enforcement to report that individuals were drinking and smoking on the sidewalk outside the complex.

39. Defendant Youngquist was dispatched to the apartment complex.

40. Youngquist has a pattern of making dishonest statements and committing constitutional violations as a police officer.

41. When Youngquist arrived, Richard was holding a beer bottle on the patio.



42. Denzel was standing next to Richard on the patio, holding nothing.

43. Youngquist and the other Defendants never observed evidence that Denzel had been drinking on the sidewalk or smoked marijuana.

44. Youngquist then asked the three men for their identification.

45. Denzel told Youngquist that he did not have his identification.

46. Davis began to look for his identification card and asked Youngquist why he was being asked to produce it.

47. Youngquist responded that he had received a call about the three men drinking beer on the sidewalk.

48. Youngquist again asked Denzel for his name.

49. Denzel again declined to provide his name.

6

50. Youngquist then claimed they had also received a call about the three men smoking marijuana.

51. The men explained they had just stepped outside to smoke a cigarette after watching the basketball game.

52. Youngquist replied, "Ok. Fair enough. It's not a big deal. I just need to document who I talk to guys…It's a game we gotta play."

53. Youngquist proceeded to say, "I'm just trying to have a conversation with you, and you guys are being weird."

54. Richard then provided his name to Youngquist.

55. During this time, Defendants Court, Burckel, Yiannackopoulos, and Kossow arrived.

56. Youngquist again asked Denzel for his name.

57. Denzel again declined to provide his name.

58. Youngquist responded, "Well, I'm about to get it. We can do this one of two ways."

59. Denzel again declined to provide his name.

60. Denzel stated he was going to go back inside.

61. Youngquist told Denzel he could not leave because they needed to get his name.

62. At that point, Denzel was not free to leave.

63. Youngquist further stated, "It's going to happen one way or the other. I'm trying to be nice."

64. Moments later, Youngquist stated, "So we can either do it the nice way, or we can do it the hard way. I'm going to get your name one way or the other."

65. Denzel again declined to provide his name.

66. Youngquist told Denzel, "This is your last chance."

67. Youngquist then stated, "He doesn't want to identify himself, so he's going to go in handcuffs."

68. Youngquist then rushed Denzel.

69. Denzel did not attempt to resist or flee.

70. Youngquist grabbed Denzel's shoulders with two hands and forcefully shoved him into the glass entry door.

71. Defendants Court, Burckel, Yiannackopoulos, and Kossow had the opportunity to intervene and stop Youngquist's excessive force.

72. Rather than intervene, they also grabbed Denzel and helped Youngquist throw him to the ground.

73. Youngquist punched Denzel three times in the stomach.

74. While Denzel was on the ground, the Defendants ordered him to put his hands behind his back.

75. Denzel attempted to comply with this order.

76. However, he was unable to because the Defendants had him pinned on his side against the ground.



77. While he was attempting to comply, Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow continued to use excessive force against Denzel.

78. Youngquist pushed Denzel's face into the concrete sidewalk.

79. Youngquist threatened to use a taser on Denzel.

80. After Youngquist threatened to use a taser on Denzel, Yiannackopoulos tased Denzel.

81. Yiannackopoulos acted in response to Youngquist's threat.

82. After tasing Denzel, the Defendants handcuffed him, held him on the sidewalk, and searched his pockets.

83. Denzel was eventually booked and released. Defendant Youngquist issued him citations for resisting and disorderly conduct.

84. As a direct and proximate result of the acts of Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow, as detailed above, Plaintiff suffered, *inter*

*alia,* bodily injury, pain, suffering, mental distress, humiliation, loss of liberty, and loss of reputation.

## COUNT I:
## 42 U.S.C. § 1983 Claim for Unlawful Seizure
## and Failure to Intervene

85. Plaintiff realleges the above paragraphs.

86. The intentional actions of Defendant Youngquist in seizing Plaintiff, without reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime, violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure and thus violated 42 U.S.C. § 1983.

87. Defendants Court, Burckel, Yiannackopoulos, and Kossow knew or should have known that Defendant Youngquist lacked reasonable suspicion to seize Plaintiff.

88. Defendants Court, Burckel, Yiannackopoulos, and Kossow failed to intervene in a constitutional violation that they knew or should have known was happening before them and that they could have stopped.

89. Defendants Court, Burckel, Yiannackopoulos, and Kossow violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure and thus violated 42 U.S.C. § 1983.

90. The aforementioned actions of Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow were the direct and proximate cause of the violations set forth above and of Plaintiff's injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Youngquist, Court, Burckel,

Yiannackopoulos, and Kossow, and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

## COUNT II:
### 42 U.S.C. § 1983 Claim for Unlawful Arrest and Failure to Intervene

91. Plaintiff realleges the above paragraphs.

92. Defendant Youngquist detained and then arrested Plaintiff through verbal commands and physical force without probable cause, violating Plaintiff's Fourth Amendment right to be free from unlawful arrest, and thus violating 42 U.S.C. § 1983.

93. Defendants Court, Burckel, Yiannackopoulos, and Kossow knew or should have known that Defendant Youngquist lacked probable cause to arrest Plaintiff.

94. Defendants Court, Burckel, Yiannackopoulos, and Kossow failed to intervene in a constitutional violation that they knew or should have known was happening before them and that they could have stopped.

95. Defendants Court, Burckel, Yiannackopoulos, and Kossow violated Plaintiff's Fourth Amendment right to be free from unlawful arrest and thus violated 42 U.S.C. § 1983.

96. The aforementioned actions of Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow were the direct and proximate cause of the violations set forth above and of Plaintiff's injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Youngquist, Court, Burckel,

11
Case 2:26-cv-00343-SCD    Filed 03/02/26    Page 11 of 15    Document 1

Yiannackopoulos, and Kossow, and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

**COUNT III:**
**42 U.S.C. § 1983 Claim for Excessive Force**
**and Failure to Intervene**

97. Plaintiff realleges the above paragraphs.

98. The intentional action of Defendant Youngquist shoving Plaintiff into a glass door was an unjustified and excessive use of force. This act violated Plaintiff's Fourth Amendment right to be free from excessive force in violation of 42 U.S.C. § 1983.

99. Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow grabbing Plaintiff and throwing him to the ground and continuing to use force against Plaintiff while he was on the ground were unjustified and excessive uses of force. These actions violated Plaintiff's Fourth Amendment right to be free from excessive force in violation of 42 U.S.C. § 1983.

100. In the alternative, Defendants Court, Burckel, Yiannackopoulos, and Kossow knew or should have known that Defendant Youngquist's use of force against Plaintiff was unjustified and excessive use of force.

101. Defendants Court, Burckel, Yiannackopoulos, and Kossow failed to intervene in a constitutional violation they knew or should have known was happening before them and that they could have stopped.

102. Defendants Court, Burckel, Yiannackopoulos, and Kossow thus violated Plaintiff's Fourth Amendment right to be free from excessive force.

103. Defendant Yiannackopoulos further used unjustified and excessive force when he tased Plaintiff. This act violated Plaintiff's Fourth Amendment right to be free from excessive force in violation of 42 U.S.C. § 1983.

104. Defendant Youngquist ordered Defendant Yiannackopoulos to tase Plaintiff.

105. Defendants Youngquist, Court, Burckel, and Kossow knew or should have known that Defendant Yiannackopoulos's tasing Plaintiff was unjustified and excessive use of force.

106. Defendants Youngquist, Court, Burckel, and Kossow failed to intervene in a constitutional violation that they knew or should have known was happening.

107. Defendants Youngquist, Court, Burckel, and Kossow thus violated Plaintiff's Fourth Amendment right to be free from excessive force.

108. The aforementioned actions of Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries, including pain, mental suffering, anguish, fear, humiliation, loss of personal freedom, and expenses.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow, and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action, attorneys' fees; and such other and further relief that the Court deems just and equitable.

## COUNT IV:
## Indemnification Claim Against City of West Allis

109. Plaintiff realleges the above paragraphs.

110. Wisconsin law, WIS. STAT. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable for acts within the scope of their employment.

At all times relevant to this action, Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow were engaged in the conduct complained of while they were on duty and in the course and scope of their employment with the City of West Allis.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against City of West Allis plus the cost of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable. Additionally, Plaintiff asks this Court to find that the City of West Allis is liable to defend this action against Defendants Youngquist, Court, Burckel, Yiannackopoulos, and Kossow and required to satisfy any judgment against its employees, by virtue of WIS. STAT. § 895.46.

## JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to FED. R. CIV. P. 38(b), on all issues so triable.

Respectfully submitted,

Dated: 2 March 2026,

/s/ R. Rick Resch
John H. Bradley
  Wisconsin Bar No. 1053124
R. Rick Resch
  Wisconsin Bar No. 1117722
William E. Grau
  Wisconsin Bar No. 1117724
STRANG BRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
William@StrangBradley.com

Counsel for Plaintiff